IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| P&L CHEMICAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | |
| ) | |
| SANTOLUBES MANUFACTURING, LLC., ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, P&L Chemical, Inc., by and through counsel, for its cause of action against Defendant SantoLubes Manufacturing, LLC., states as follows:

### Parties, Jurisdiction and Venue

1.  Plaintiff, P&L Chemical, Inc. (hereinafter "Plaintiff"), is a Georgia corporation. Plaintiff is a citizen of the state of Georgia, within the meaning of 28 U.S.C. § 1332(c)(1).

2.  Defendant, SantoLubes Manufacturing, LLC (hereinafter "Defendant"), is a Missouri limited liability company, with a principal place of business located in St. Charles County, Missouri, in this district, and which regularly conducts business in this district. Defendant is a citizen of Missouri within the meaning of 28 U.S.C. § 1332(c)(1).

3.  The cause of action alleged by Plaintiff herein exceeds the sum of $75,000.00, exclusive of interest and costs.

4.  There is diversity of citizenship between Plaintiff and Defendant and, therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

## Allegations Common to All Count

6.  Plaintiff is a supplier and distributor of industrial waxes, alcohols, and lubricants.

7.  On or about April 8, 2009, Plaintiff, as supplier, S&S Chemical, LLC (hereinafter "S&S"), as customer, and Blackman Uhler Specialties, LLC (hereinafter "BU"), as manufacturer, executed and entered into a Contract Manufacturing Agreement (a copy of which is attached hereto as **Exhibit "1"**) regarding the supply of certain industrial wax and alcohol product lines to be manufactured by BU, at its plant in South Carolina, and supplied by Plaintiff to S&S, over a three-year term (hereinafter, the "Original Agreement").

8.  Prior to entering into the Original Agreement, Plaintiff entered into a Confidentiality Agreement with BU (the "Confidentiality Agreement") (a copy of which is attached hereto as **Exhibit "2"**), whereby, Plaintiff agreed to give BU "access to certain proprietary information related to manufacturing and marketing" certain industrial wax and alcohol product lines, and BU agreed not to disclose such information for a period of 15 years, and "not (to) use the Confidential Information disclosed to BU Chemical for any purpose other than in connection with BU Chemical's work for P&L except by expressed prior written authorization of P&L."

9.  After the Confidentiality Agreement was signed, P&L disclosed to BU that S&S was interested in purchasing the industrial waxes and alcohols which became the subject of the Original Agreement, and also disclosed the formula and certain information concerning the process for manufacturing these waxes and alcohols.

10. Upon information and belief, on or about October 2, 2009, Defendant purchased the assets of BU, including, but not limited to, certain property, a manufacturing plant and equipment located in Spartanburg, South Carolina. As a result, Defendant became the successor to the rights and obligations of BU under the Original Agreement and the Confidentiality Agreement executed by BU and Plaintiff.

11. Approximately six months after the Original Agreement was executed, on October 23, 2009, representatives of Plaintiff, Defendant, and S&S met in St. Louis for purposes of discussing S&S's desire to reduce the price of products sold to it under the Original Agreement.

12. As a result of the October 23, 2009 meeting, Plaintiff, Defendant, and S&S entered into a new agreement (the "Settlement Agreement") for purposes of allowing Defendant to sell industrial waxes and alcohols to S&S directly, for the first time, at a lower price than S&S was to pay under the Original Agreement. Essentially, Plaintiff and Defendant agreed to terms whereby Plaintiff would no longer act as "middle-man" between Defendant, as manufacturer, and S&S, as customer.

13. The Settlement Agreement included the following terms:

(a) Defendant purchased and assumed Plaintiff's rights under the Original Agreement, in exchange for $175,000.00 and further consideration from Defendant to Plaintiff (see (d);

(b) Plaintiff was relieved of its duties and obligations by both Defendant and S&S under the Original Agreement;

(c) Defendant was for the first time allowed to sell and supply its product directly to S&S, and S&S was to purchase its requirements for the product directly from Defendant;

(d) Defendant released Plaintiff from any and all liability for a certain

invoice for "Modification Costs" (as defined under section 25.1 of the Original Agreement), in the approximate amount of $79,000.00, the claim for which Defendant apparently acquired when it purchased the assets of BU.

14. The following day, on October 24, 2009, George E. Garrison, manager of Defendant, memorialized the terms of the Settlement Agreement struck between Plaintiff, Defendant and S&S, on October 23, 2009 in a memorandum (a copy of which is attached hereto as **Exhibit "3"**). Garrison e-mailed a copy of this memorandum to Plaintiff's president, Mark Langston, on or about November 11, 2009

15. Shortly thereafter, Defendant began performance pursuant to the Settlement Agreement, by selling the industrial alcohols and waxes, which under the Original Agreement Defendant had previously sold to Plaintiff for resale to S&S, directly to S&S. Defendant's performance under the Settlement Agreement included acceptance by it of purchase orders directly from S&S, delivery of product to S&S by Defendant, and directly invoicing S&S for product, all for the first time.

16. Since the date of the Settlement Agreement, Plaintiff has fully performed pursuant to its obligations thereunder and, in exchange for the consideration promised in the Settlement Agreement, has permitted Defendant to manufacture, sell and supply product directly to Plaintiff's former customer, S&S.

17. To date, and despite demand by Plaintiff, Defendant has failed and refused, and continues to fail and refuse, to pay to Plaintiff the sum of $175,000.00, pursuant to the Settlement Agreement. Further, Defendant continues to demand that Plaintiff make payment to it under the $79,000.00 invoice which was to be cancelled under the Settlement Agreement.

## COUNT I – BREACH OF CONTRACT - (SETTLEMENT AGREEMENT)

For Count I of its Complaint, Plaintiff states as follows:

18. Plaintiff incorporates the allegations of paragraphs 1 through 17 of this Complaint as if fully stated herein.

19. Plaintiff, Defendant and S&S entered into the Settlement Agreement on October 23, 2009, the terms of which are memorialized by Defendant's Memorandum attached hereto as **Exhibit "3"**.

20. Plaintiff has fully performed all obligations and duties required of it pursuant to the Settlement Agreement.

21. Defendant has breached the Settlement Agreement including by its failure and refusal to pay to Plaintiff the sum of $175,000.00 and by pursuing collection of the $79,000.00 note.

22. As a direct result of Defendant's breaches of the Settlement Agreement, Plaintiff has been damaged at least in the amount of $256,000.00, plus pre-judgment interest accruing since October 23, 2009.

WHEREFORE, Plaintiff, P&L Chemical, Inc., prays that the Court enter judgment in its favor and against Defendant, SantoLubes Manufacturing, LLC, in the amount of $175,000.00, for pre-judgment interest thereon, ordering Defendant to cancel the invoice for $79,000.00, for its costs incurred herein, and for any other and further relief the Court deems just and proper.

## COUNT II – QUANTUM MERUIT

For Count II of its Complaint, and in the alternative to Count I, Plaintiff states as follows:

23. Plaintiff incorporates the allegations of paragraphs 1 through 22 of this Complaint as if fully stated herein.

24. Plaintiff tendered to Defendant all of Plaintiff's rights pursuant to the Original Agreement for purposes of supplying Plaintiff's customer, S&S, with certain industrial product lines, with Plaintiff agreeing to waive its rights under the Original Agreement, and its rights under the Confidentiality Agreement executed between Plaintiff and Defendant, in exchange for the consideration from Defendant.

25. The rights under the Original Agreement and Confidentiality Agreement transferred by Plaintiff to Defendant, or waived by Plaintiff, providing Defendant with direct sales rights as to S&S, had a reasonable value of at least $256,000.00.

26. The law implies a promise that Defendant will pay reasonable and just compensation for the valuable contract rights transferred by Plaintiff to Defendant and/or waived by Plaintiff.

27. Despite demand by Plaintiff, Defendant has failed and refused, and continues to fail and refuse, to pay Plaintiff for the reasonable value of the contract rights transferred by Plaintiff to Defendant, or waived by Plaintiff.

WHEREFORE, Plaintiff, P&L Chemical, Inc., prays that the Court enter judgment in its favor and against Defendant, SantoLubes Manufacturing, LLC, at least in the amount of $175,000.00, for pre-judgment interest thereon, ordering Defendant to

cancel the invoice for $79,000.00, for its costs incurred herein, and for any other and further relief the Court deems just and proper.

### COUNT III – UNJUST ENRICHMENT

For Count III of its Complaint, and in the alternative to Counts I and II, Plaintiff states as follows:

28.     Plaintiff incorporates the allegations of paragraphs 1 through 27 of this Complaint as if fully stated herein.

29.     By its agreement to transfer or waive its contract rights under the Original Agreement and the Confidentiality Agreement, and by permitting Defendant to supply product directly to Plaintiff's customer, S&S, for the first time, Plaintiff has conferred a benefit upon Defendant.

30.     Defendant has appreciated and acknowledged that Plaintiff has conferred this benefit upon it.

31.     Defendant has accepted and retained the benefit conferred by Plaintiff, demonstrated by its entry into agreements to sell, and upon information and belief actually selling, product directly to S&S.

31.     Defendant's acceptance and retention of the benefit conferred by Plaintiff under these circumstances and without payment to Plaintiff in exchange is inequitable.

WHEREFORE, Plaintiff, P&L Chemical, Inc., prays that the Court enter judgment in its favor and against Defendant, SantoLubes Manufacturing, LLC, at least in the amount of $175,000.00, for pre-judgment interest thereon, ordering Defendant to cancel the invoice for $79,000.00, for its costs incurred herein, and for any other and further relief the Court deems just and proper.

## COUNT IV – DECLARATORY JUDGMENT

For Count IV of its Complaint, Plaintiff states as follows:

33. Plaintiff incorporates the allegations of paragraphs 1 through 32 of this Complaint as if fully stated herein.

34. This claim for declaratory judgment is initiated pursuant to Rule 57 of the Federal Rules of Civil Procedure, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, to obtain a declaration of the rights and obligations of Plaintiff and Defendant pursuant to the Settlement Agreement.

35. There is an actual controversy between Plaintiff and Defendant concerning Defendant's rights and obligations under the Settlement Agreement, as evidenced by Defendant's failure and refusal to pay the sum of $175,000.00 to Plaintiff and to cancel the invoice for $79,000.00, pursuant thereto.

36. This controversy is ripe for adjudication, as Plaintiff's demands for Defendant's performance of the Settlement Agreement have been refused.

37. In the Settlement Agreement, Defendant, on its behalf and as the assignee and successor in interest to BU, agreed to release Plaintiff from all liability pursuant to the invoice for $79,000.00 which BU had issued to Plaintiff for certain Modification Costs.

38. Plaintiff's right to be released from said alleged debt pursuant to the Settlement Agreement constitutes a legally protectable interest.

39. Plaintiff seeks a declaration as to its alleged liability under the $79,000.00 invoice, and has no adequate remedy at law.

WHEREFORE, Plaintiff, P&L Chemical, Inc., prays that the Court enter judgment in its favor and against Defendant, SantoLubes Manufacturing, LLC, declaring, decreeing,

and adjudging that Plaintiff is released from any and all liability to Defendant and/or its predecessor/assignor, Blackman Uhler Specialties, LLC, pursuant to a certain invoice in the approximate amount of $79,000.00, for its costs incurred herein, and for any other and further relief the Court deems just and proper.

### COUNT V – BREACH OF CONTRACT - (ORIGINAL AGREEMENT AND CONFIDENTIALITY AGREEMENT)

For Count V of its Complaint, and in the alternative to Counts I, II, III and IV, Plaintiff states as follows:

40. Plaintiff incorporates the allegations of paragraphs 1 through 17 of this Complaint as if fully stated herein.

41. Pursuant to the provisions of the Original Contract, Defendant was to sell industrial waxes and alcohols identified therein to Plaintiff, for resale by Plaintiff to S&S.

42. After Plaintiff and Defendant entered into the Confidentiality Agreement, Plaintiff disclosed to Defendant certain Confidential Information, including that S&S was interested in purchasing certain industrial waxes and alcohols, the formula for producing the waxes and alcohols which S&S was interested in purchasing, processes utilized to produce such waxes and alcohols, and pricing information as between Plaintiff and S&S. Under the Confidentiality Agreement, Defendant was prohibited from using such confidential information for any purpose other than to supply and sell these waxes and alcohols to Plaintiff, absent the express written authorization of Plaintiff.

43. Plaintiff never provided Defendant with express written authorization to sell industrial waxes and alcohols to S&S.

44. Defendant engaged in transactions with S&S whereby Defendant agreed to directly sell and supply to S&S the very types of industrial waxes and alcohols for which Defendant had been provided formulas and manufacturing processes and pricing data pursuant to Defendant's agreements with Plaintiff.

45. By entering into agreements with S&S to sell such industrial waxes and alcohols directly to S&S and by utilizing confidential information, Defendant breached both the Original Agreement and the Confidentiality Agreement.

46. Plaintiff has been damaged by Defendant's breaches of the Original Agreement and the Confidentiality Agreement. Plaintiff's damages include, but are not limited to: (a) lost profits in an as yet undetermined amount, in excess of $1,000,000.00; and (b) at least $185,000.00 in expenses incurred by Plaintiff for development of the manufacturing processes to produce the industrial waxes and alcohols that were to be produced under the Original Agreement, including $114,438.66 for "Modification Capital" which Plaintiff paid to Defendant pursuant to paragraph 25.1 of the Original Agreement.

WHEREFORE, Plaintiff prays for damages in an amount in excess of $1,185,000.00, for pre-judgment interest, for its costs and expenses, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT

47. Plaintiff incorporates the allegations of paragraphs 1 through 17 and 40 through 46 of this Complaint as if fully stated herein.

48. Plaintiff, Defendant, and S&S were all parties to the Original Contract, under which Plaintiff was to purchase certain industrial waxes and alcohols from Defendant and was to re-sell these waxes and alcohols to S&S at a higher price than that which Plaintiff

paid to Defendant. Under the Original Agreement, S&S was to purchase all of its requirements for these waxes and alcohols from Plaintiff.

49. Defendant was aware of the provisions of the Original Agreement whereby S&S was to purchase all of its requirements for certain industrial waxes and alcohols from Plaintiff.

50. Defendant, however, induced S&S to breach its obligation to purchase its entire requirements for certain industrial waxes and alcohols from Plaintiff. Defendant did so by representing to S&S, and by inducing Plaintiff to represent to S&S, that Defendant had entered into the Settlement Agreement with Plaintiff whereby Defendant was authorized by Plaintiff to sell these waxes and alcohols directly to S&S.

51. Defendant now takes the position that it did not enter into a Settlement Agreement with Plaintiff.

52. S&S did purchase industrial waxes and alcohols, which had been the subject of the Original Agreement, directly from Defendant.

53. Defendant intentionally induced S&S to breach its obligations under the Original Agreement to purchase its requirements for certain industrial waxes and alcohols from Plaintiff, and it did so without justification or excuse, and in breach of Defendant's own obligations under the Original Agreement and the Confidentiality Agreement.

54. Plaintiff has been damaged by Defendant's interference with Plaintiff's contract with S&S. Such damages include, but are not limited to: (a) lost profits in an as yet undetermined amount, in excess of $1,000,000.00; and (b) approximately $185,000.00 in expenses incurred by Plaintiff for development of the manufacturing processes to produce the industrial waxes and alcohols that were to be produced under the Original

Agreement, including $114,438.66 for "Modification Capital" which Plaintiff paid to Defendant pursuant to paragraph 25.1 of the Original Agreement.

55.     Defendant's conduct in inducing S&S to breach its contractual obligations owed to Plaintiff were outrageous because of Defendant's evil motive or reckless indifference to the rights of others.

WHEREFORE, Plaintiff prays for actual damages in an amount in excess of $1,185,000.00, for pre-judgment interest, for punitive damages in such amount as to deter Defendant from engaging in similar outrageous conduct in the future, for its costs and expenses, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT VII – BREACH OF CONTRACT - (ORIGINAL AGREEMENT)

For Count VII of its Complaint, and in the alternative to Counts I, II, III, IV and V, Plaintiff states as follows:

56.     Plaintiff incorporates the allegations of paragraphs 1 through 17 and 40 through 44 of this Complaint as if fully stated herein.

57.     Pursuant to paragraph 25.1 of the Original Agreement, Plaintiff was to reimburse Defendant up to $250,000.00 for initial capital requirements incurred by Defendant to manufacture the industrial waxes and alcohols identified in the Original Agreement ("Modification Capital"). Plaintiff advanced $114,438.66 to Defendant as and for Modification Capital.

58.     Pursuant to paragraph 25.4, if Defendant terminated the Original Agreement, Defendant was to reimburse Plaintiff for any Modification Capital for which it had not been reimbursed by S&S.

59. S&S did not reimburse Plaintiff for any of the Modification Capital advanced by Plaintiff to Defendant.

60. On or about November 12, 2009, Defendant informed Plaintiff and S&S that Defendant was no longer interested in manufacturing industrial waxes and alcohols for S&S, thus terminating the Original Agreement in breach of Defendant's contractual obligations.

61. Defendant has represented to Plaintiff and S&S that, on or about November 14, 2009, a release of hazardous substances occurred while Defendant was manufacturing waxes and/or alcohols for S&S. Although Defendant was required contractually to have consulted with Plaintiff and S&S as to proper manufacturing processes, Defendant refused to do so and was using a process that had not been approved by either Plaintiff or S&S at the time the release allegedly occurred.

62. Defendant has wrongfully informed Plaintiff and S&S that the alleged release constituted a Force Majure and grounds to terminate the Original Agreement, and also stated that S&S's alleged failure to provide new manufacturing instructions for production of the waxes and alcohols in an environmentally safe manner constituted a breach of the Original Agreement, so that Defendant did not have to reimburse the Modification Capital to Plaintiff or otherwise perform under the Original Agreement.

63. Plaintiff has been damaged in at least the amount of $114,438.66 by Defendant's refusal to reimburse the Modification Capital to it.

WHEREFORE, Plaintiff prays for damages in the amount of at least $114,438.66, for prejudgment interest, for its costs of suit, and for such other and further relief as the Court deems just and proper under the circumstances.

DANNA MCKITRICK, P.C.


BY:  /s/ A. Thomas DeWoskin
David R. Bohm, #9271
A. Thomas DeWoskin, #2953
Jeffrey R. Schmitt, #498759
7701 Forsyth Blvd., Suite 800
St. Louis, MO 63105-3907
(314) 726-1000/(314) 725-6592 fax
E-mail: tomd@dmfirm.com
E-mail: dbohm@dmfirm.com
E-mail: jschmitt@dmfirm.com

ATTORNEYS FOR PLAINTIFF


321544.wpd