UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| P&L CHEMICAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:10 CV 408 DDN |
| | ) |
| | ) |
| SANTOLUBES MANUFACTURING, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

This action is before the court on the motions of defendant Santolubes Manufacturing, LLC to dismiss and to strike. (Doc. 8.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 15.) Oral arguments were heard on July 1, 2010.

**I. BACKGROUND**

On March 9, 2010, plaintiff P&L Chemical, Inc. ("P&L") commenced this action against Santolubes Manufacturing, LLC ("Santolubes") for damages arising out of a contract dispute. (Doc. 1.)

P&L alleges the following facts in its complaint:

On or about April 8, 2009, P&L entered into a Contract Manufacturing Agreement with S&S Chemical, LLC ("S&S") and Blackman Uhler Specialties, LLC ("Blackman"). (Id. at ¶ 7.) Under the agreement, Blackman was to manufacture industrial wax and alcohol products at its South Carolina plant and sell them to P&L, who was to supply the products to the final customer, S&S, over a three year period. (Id.); (Doc. 12-1.)[1]

Before entering into the Contract Manufacturing Agreement, P&L and Blackman entered into a Confidentiality Agreement, under which P&L gave Blackman "access to certain proprietary information related to

---

[1]P&L inadvertently failed to attach certain exhibits to its original complaint. (Doc. 12.) P&L subsequently filed a supplement to its complaint that contained these exhibits. (Id.) These exhibits are considered part of the complaint. See Fed. R. Civ. P. 10(c).

manufacturing and marketing" industrial wax and alcohol products. (Doc. 1 at ¶ 8.) Blackman agreed not to disclose this information for fifteen years, and "not [to] use the Confidential Information disclosed to [it] for any purpose other than in connection with [its] work for P&L except by expressed prior written authorization of P&L." (Doc. 12-2 at 5.)

After entering into the Confidentiality Agreement, P&L disclosed to Blackman that S&S was interested in purchasing certain industrial waxes and alcohols. (Doc. 1 at ¶ 9.) The industrial waxes and alcohols ultimately became the subject of the Contract Manufacturing Agreement. (Id.) P&L also disclosed the formula of and information concerning the manufacturing process of the industrial waxes and alcohol. (Id.)

On or about October 2, 2009, Santolubes purchased Blackman's assets, including the South Carolina manufacturing plant and the equipment contained therein. (Id. at ¶ 10.) Santolubes also became the successor to Blackman's rights and obligations under the Contract Manufacturing Agreement and the Confidentiality Agreement. (Id.)

On October 23, 2009, representatives from P&L, Santolubes, and S&S met in Saint Louis, Missouri to discuss S&S's desire to reduce the price of products it purchased under the Contract Manufacturing Agreement. (Id. at ¶ 11.) The parties orally reached a new agreement ("Settlement Agreement"), under which P&L would no longer serve as an intermediary between Santolubes and S&S, thereby allowing Santolubes to sell industrial waxes and alcohol to S&S directly, at a lower price. (Doc. 1 at ¶ 12.) The Settlement Agreement included the following terms:

> (a) Santolubes purchased and assumed P&L's rights under the Original Agreement, in exchange for $175,000.00 and further consideration from Santolubes to P&L (see (d));
>
> (b) P&L was relieved of its duties and obligations by both Santolubes and S&S under the Contract Manufacturing Agreement;
>
> (c) Santolubes was for the first time allowed to sell and supply its products directly to S&S, and S&S was to purchase its requirements for the product directly from Santolubes;
>
> (d) Santolubes released P&L from any and all liability for a certain invoice for "Modification Costs" in the approximate amount of $79,000.00, the claim for which Santolubes apparently acquired when it purchased the assets of Blackman.

(Id. at ¶ 13.)

On October 24, 2009, George E. Garrison, the manager of Santolubes, wrote a memorandum ("Memorandum") containing the terms of the Settlement Agreement. (Id. at ¶ 14.) Garrison e-mailed a copy of the Memorandum to P&L's president, Mark Langston, on or about November 11, 2009. (Id.)

Pursuant to the Settlement Agreement, Santolubes began selling the industrial alcohols and waxes directly to S&S. (Id. at ¶ 15.) Specifically, Santolubes accepted purchase orders directly from S&S, delivered products to S&S, and directly invoiced S&S. (Id.)

P&L performed its obligations under the Settlement Agreement by allowing Santolubes to perform these acts. (Doc. 1 at ¶ 16.) Nevertheless, Santolubes failed, refused, and continues to refuse to pay P&L the $175,000.00 owed under the Settlement Agreement, and Santolubes continues to demand that P&L pay the $79,000.00 invoice supposedly cancelled under the Settlement Agreement. (Id. at ¶ 17.)

In its amended complaint, P&L brings seven claims against Santolubes. In Count I, P&L asserts a breach of contract claim. (Id. at ¶ 18-22.) In Count II, P&L brings a quantum meruit claim. (Id. at ¶ 23-27.) In Count III, P&L asserts an unjust enrichment claim. (Id. at ¶ 26-31.) In Count IV, P&L seeks a declaratory judgment. (Id. at ¶ 33-39.) In Count V, P&L asserts another breach of contract claim. (Doc. 1 at ¶ 40-46.) In Count VI, P&L asserts a tortious interference claim. (Id. at ¶ 47-55.) In Count VII, P&L bring another breach of contract claim. (Id. at ¶ 56-62.)

## II. MOTION TO DISMISS

Santolubes moves to dismiss P&L's complaint. (Doc. 8); Fed. R. Civ. P. 12(b)(6). As to Counts I, II, III, and IV, Santolubes argues that the Memorandum cannot be an enforceable contract; the Contract Manufacturing Agreement expressly precludes oral modification; and the Memorandum requires certain conditions be met before it becomes a legally binding contract, which have not been met. As to Count VI, Santolubes argues that Missouri law does not recognize a tortious interference cause of action against another party to the same contract. (Doc. 9.)

P&L responds that the Memorandum is not a contract itself, but instead is a memorialization of an oral contract; Santolubes has acquiesced to oral modification of the Contract Manufacturing Agreement through its conduct; and that there are no conditions precedent to enforcement of the Settlement Agreement. P&L also responds that its tortious interference claim should survive because it alleged that Santolubes induced S&S, a third party, to breach its contractual obligations to P&L. (Doc. 18.)

Santolubes replies that the Memorandum is neither a contract nor evidence reflecting an oral agreement, but instead only reflected negotiations that never came to fruition. Santolubes also argues that there is no evidence that S&S, who was also party to the Contract Manufacturing Agreement, agreed to a modification; and that Missouri law does not recognize P&L's tortious interference claim. (Doc. 22.)

### III.   MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir. 2003). In 2007, the Supreme Court issued a new standard for evaluating motions to dismiss. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (overruling the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Despite overruling the Conley standard, the Supreme Court cautioned that it had not created a heightened pleading standard. Bell Atlantic, 550 U.S. at 569 n.14, 570.

Under Bell Atlantic, a complaint must include enough facts to state a claim for relief that is *plausible* on its face. Id. at 570. If the claims are merely conceivable - but not plausible - the court must dismiss the complaint. Id. To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555. A complaint does not, however, need specific facts; a complaint only needs to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 92 (2007) (per curiam). The Federal Rules of Civil Procedure demand only that a

complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That said, the allegations must still be enough to "raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555.

A complaint must be liberally construed in the light most favorable to the plaintiff. See id. Moreover, a court must accept the facts alleged as true, even if doubtful. Id. Thus, a well-pled complaint may proceed even if it appears the recovery is very remote or unlikely. Id. To warrant dismissal, the plaintiff's entitlement to relief must fall short of being plausible. Id. at 569 n.14, 570.

## IV. DISCUSSION

### A. Oral Settlement Agreement

In its complaint, P&L alleges that the parties orally formed the Settlement Agreement, which was to supercede or amend the Contract Manufacturing Agreement, in their October 23, 2009 meeting. (Doc. 1 at ¶ 12.) P&L further alleges that the Memorandum "memorialized the terms of the Settlement Agreement struck between [the parties] and S&S[] on October 23, 2009 . . . ." (Id. at ¶ 14.)

Therefore, to the extent Santolubes argues that the Memorandum itself cannot serve as an enforceable contract, these arguments need not be addressed because they do not address P&L's theory of the case.

#### 1. Contract Manufacturing Agreement Prohibition

The parties do not dispute that the Contract Manufacturing Agreement "is to be construed in accordance with the laws of the State of Colorado . . . ."[2] (Doc. 12-1 at 18-19, 23.1.) Under Colorado law, a written contract's provision requiring all modifications be in writing does not preclude modification by oral agreement. Colorado Inv. Servs., Inc. v. Hager, 685 P.2d 1371, 1376-77 (Col. Ct. App. 1984). "In addition, an express provision in a written agreement may be waived, either expressly

---

[2]At the hearing, the parties agreed that Missouri law controls the rules of decision in this case, except for those regarding the Contract Manufacturing Agreement.

or by implication." James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail, 892 P.2d 367, 372 (Col. Ct. App. 1994). "[T]he question of waiver is a question of fact . . . ." Id.

P&L alleges that the parties orally formed the Settlement Agreement, which was to supercede the Contract Manufacturing Agreement, and that the Memorandum is evidence thereof. Accepting these allegations as true, P&L's claim is not precluded by the applicable state law.

### 2. Conditions Precedent

Santolubes argues that the Memorandum is not an enforceable contract because a condition precedent has not been met. Specifically, Santolubes argues that the Memorandum contemplates the formation of a joint venture, which has not yet occurred, according to Santolubes. (Doc. 9.)

As discussed above, P&L alleges that the parties orally reached the Settlement Agreement on October 23, 2009, and that the Memorandum only reflects that agreement. (Doc. 1 at ¶¶ 12-14.) Therefore, the Memorandum's adequacy as a contract is not relevant.

In addition, the provisions raised by Santolubes are contained in the alleged second page of the Memorandum. According to P&L, it did not receive a second page of the Memorandum, and thus only submitted one page as an exhibit to its complaint.

In its reply brief, Santolubes recognized that "it must confine its arguments at this point to the documents that P&L has placed before the court given the nature of the instant motion." (Doc. 22 at 2, n.2.) Therefore, the court need not further address this issue at this time.

### B. Tortious Interference Claim

Under Missouri law, "[a] submissible case of tortious interference requires the plaintiff to adduce evidence of: (1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250 (Mo. 2006) (en banc).

In Count VI, P&L alleges that it, Santolubes, and S&S were parties to the Contract Manufacturing Agreement, and that under the Contract

Manufacturing Agreement, Santolubes was to sell P&L the products, and then P&L was to resell the products to S&S. P&L alleges that Santolubes "intentionally induced S&S to breach its obligations under the [Contract Manufacturing Agreement] to purchase its requirements for certain industrial waxes and alcohols from [P&L], and it did so without justification or excuse, and in breach of [Santolubes's] own obligations under the [Contract Manufacturing Agreement] and the Confidentiality Agreement." (Doc. 1 at ¶ 53.)

Under Missouri law, "[t]here [is] no basis for bringing an action for tortious interference with a business or contractual relationship against a party to the contract that created the relationship." Gill v. Farmer Bureau Life Ins. Co. of Mo., 856 S.W.2d 96, 100 (Mo. Ct. App. 1993). See also Jurisprudence Wireless Commc'ns, Inc. v. Cybertel Corp., 26 S.W.3d 300, 302 (Mo. Ct. App. 2000). Therefore, even if P&L's allegations are true, they do not support a tortious interference claim. Cf. Lick Creek Sewer Sys., Inc. v. Bank of Bourbon, 747 S.W.2d 317, 323 (Mo. Ct. App. 1988).

## V. MOTION TO STRIKE

Santolubes moves to strike P&L's request for damages in Counts V and VII under Fed. R. Civ. P. 12(f). Santolubes argues that the Contract Manufacturing Agreement explicitly limits the parties to recovery of actual damages. (Doc. 8.) P&L responds that Count V also seeks damages for breach of the Confidentiality Agreement, which contains no such restriction, and that Count VII only seeks actual damages and prejudgment interest. (Doc. 18.) Santolubes replies that it was not a party to the Confidentiality Agreement, and that the Confidentiality Agreement was incorporated into the Contract Manufacturing Agreement. Santolubes further replies that prejudgment interest is barred because it does not fall under the umbrella of actual damages. (Doc. 22.)

The Contract Manufacturing Agreement provides:

*In no event will any of the parties be liable to the others for special, indirect, incidental, punitive, exemplary, consequential damages or loss including[] lost profits, loss of business opportunity or other similar damages. . . .*

(Doc. 12-1 at 12, § 10.6) (emphasis added).  These express terms limit P&L in the damages it can recover.

In addition, as Santolubes argues, the Confidentiality Agreement was expressly incorporated into the Contract Manufacturing Agreement.  (Doc. 12-1 at 17.)  "In Missouri, matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract *haec verba*."  Livers Bronze, Inc. v. Turner Const. Co., 264 S.W.3d 638, 642-43 (Mo. Ct. App. 2008) (citations omitted).  Thus, the Confidentiality Agreement is subject to the same limitations as the Contract Manufacturing Agreement, and P&L is limited as far as the damages it seeks arising out of the Confidentiality Agreement.

As for P&L's claims for prejudgment interest, the Eighth Circuit upheld an award of prejudgment interest despite a similar contractual restriction.  See Northern States Power Co. v. ITT Meyer Industries, 777 F.2d 408, 413 (8th Cir. 1985) (applying Minnesota law, implicitly holding that the prohibition that the defendant "[would not] be liable for any costs, loss, expense, damages, special damages, incidental damages or consequential damages . . ." did not prohibit recovery of prejudgment interest).  Under Missouri law, "[a] party is entitled to prejudgment interest . . . on damages for breach of contract if the amount is liquidated or readily ascertainable by reference to recognized standards."  Midwest Asbestos Abatement Corp. v. Brooks, 90 S.W.3d 480, 486 (Mo. Ct. App. 2002).  Therefore, P&L is not precluded from seeking prejudgment interest.

## VI.  CONCLUSION

An appropriate order is issued herewith sustaining in part, and otherwise denying the motion of defendant to dismiss (Doc. 8) and sustaining in part, and otherwise denying the motion of defendant to strike (Doc. 8).

                                       /S/   David D. Noce
                                  **UNITED STATES MAGISTRATE JUDGE**

Signed on December 3, 2010.